## KIMBALL *v.* TOWN OF LAKELAND.

*(Circuit Court, D. Minnesota. February 19, 1890.)*

RAILROAD COMPANIES—MUNICIPAL AID—BONDS—ESTOPPEL.
Gen. St. Minn. 1878, c. 34, authorizes municipal corporations to issue railroad aid bonds, provided an agreement is reached between the railroad company and the municipality in either one of two modes. In 1879 this act was amended so as to allow but one mode of making such agreement. In 1880, town bonds were issued, in pursuance of said act, upon an agreement entered into in the mode which had been repealed. The bonds recited that they were issued under said act, and that all the conditions of the act had been complied with. *Held,* that the town was estopped from denying the validity of the bonds as against a *bona fide* holder for value.

At Law.

Action by John Kimball against the town of Lakeland, to recover interest on certain bonds.

*Warner & Lawrence,* for plaintiff.

*L. L. Manwaring,* and *Clapp & Macartney,* for defendant.

SHIRAS, J. On the 1st day of July, 1880, the town of Lakeland, a municipal corporation of Washington county, Minn., issued bonds, in the sum of $5,000, in aid of the construction of the Hastings & Stillwater Railroad, payable on the 1st day of July, 1900, with interest at the rate of 7 per cent. per annum, payable semi-annually, according to the terms of interest coupons attached to said bonds. Having defaulted in the payment of interest, the present action was commenced, in 1886, to recover $1,925, the interest then due and unpaid; the plaintiff having become the owner of the bonds by purchase from the prior holders thereof.

v.41F.no.5—19

The defense is that the bonds are invalid and void. By written stipulation, duly signed on behalf of the parties, it is admitted that—

"The coupon bonds referred to in the pleadings were made and issued under the provision of Gen. St. 1878, c. 34, § 98, which is the same as section 7, c. 106, Gen. Laws 1877, and upon and after proceedings taken in full compliance with, and according to, said provision, and not otherwise. The plaintiff purchased said coupon bonds, in the usual course of business, at Concord, N. H., of which state the plaintiff then was, and ever since has been, a citizen, after they were so made and issued, and paid therefor full value, in good faith, having no notice of any defect in said statutory provisions, and ever since then has been, and is, the owner and holder of said coupon bonds. Said purchase was made prior to the year A. D. 1883. Said proceedings for issuance of said bonds were so had during the year A. D. 1880, and prior to July 1, 1880; and said bonds were actually delivered to, and became the property of, the payee therein named, on the 17th day of September, A. D. 1880, without said payee having any knowledge or notice of any defect in said statutory provisions, after which the same passed through divers transfers to said plaintiff, as before stated."

The bonds issued are negotiable in form, are payable to the Stillwater & Hastings Railroad Company or bearer, and contain the following recital:

"This bond is issued under an act of the legislature of the state of Minnesota, approved March 5, 1877, entitled "An act to authorize municipal corporations to aid in the construction of railroads," and in strict and literal compliance with the conditions and provisions of said act, which said conditions and provisions, all and singular, have been observed and followed, so as to make this bond the legal and binding obligation of said town of Lakeland. In testimony whereof, the said town of Lakeland has caused these presents to be signed by the chairman of the board of supervisors, and countersigned by its town-clerk, this first day of July, 1880.

"L. H. HUNTOON, Town Clerk.
"JOHN BIRCH, Chairman of Board of Sup'vrs."

The act of 1877 authorized any town, county, incorporated city, or village in the state to aid in the construction of railways by issuing bonds thereto, under various limitations in the act contained, provided an agreement to that end is reached between the railroad company and the municipality in either one of two modes pointed out in the statute. The first mode designated is through an election to be held, the prerequisites for the holding of which are the submission on behalf of the company of a proposition for such aid, to be filed with the town-clerk, and the filing in the office of such clerk a statement in writing, in favor of such election, signed by the supervisors, town-clerk, and justice of the peace or any two of them, together with at least twelve other freeholders of the town. If the majority of the votes cast at such election are in favor of the acceptance of the proposition submitted, then the mutual agreement authorizing the issuance of the bonds is deemed to have been reached, and the proper officers are authorized to issue the bonds according to the terms of the proposition. The second mode of reaching the agreement for the issuance of the bonds is by procuring and filing with the town-clerk a petition, signed by a majority of the tax-payers in the town, asking the town authorities to agree to such proposition. By an act passed

in 1879, the legislature of Minnesota repealed the section providing for the second mode of reaching an agreement for the issuance of bonds, and therefore, in 1880, when the bonds in question were issued, there was but one mode by which, under the act of 1877, the mutual agreement for the issuance of bonds in aid of railways could be reached, and that was by submitting the proposition to the tax-payers at an election called for that purpose. It seems that, by oversight, the railway officials and the town authorities were equally ignorant of the existence of the repealing statute of 1879, when the proposition for aiding the railway by the issuance of bonds was submitted, in 1880, and therefore the proposition was acted upon under the provisions of section 7 of the act of 1877, when that section was no longer in force. It is clear, therefore, that if it is open to the defendant to make the defense of a want of authority in fact to issue the bonds, good ground therefor exists, as the stipulated facts show that no election was called or held for the purpose of voting upon the acceptance or rejection of the proposition filed by the railway company.

The query is whether the town is estopped from making such defense by reason of the recitals in the bond operating in favor of an innocent holder for value. When the bonds were issued, in 1880, the act of 1877, as amended by the repeal of the seventh section thereof, fully authorized the issuance of bonds in aid of railways, in case the majority of the tax-payers should so vote at an election to be held under the provisions of the statute. By the stipulation of facts it is admitted, in effect, that when the plaintiff bought the bonds he paid full value therefor, in good faith, without any actual notice of any defect therein. He was bound to take notice of the public statutes of the state, and is therefore conclusively presumed to have had knowledge of the passage of the act of 1879, repealing the seventh section of the act of 1877. If the bonds on their face had shown that they were in fact issued under the provisions of the seventh section, then the plaintiff would have been chargeable with knowledge of the fact that the bonds were invalid, and he could not be heard to assert that he was an innocent purchaser. Such fact, however, does not appear on the face of the bond, the recital being that they were issued under the act of 1877, and it must be held to mean that they were issued under that act as it then, *i. e.*, in 1880, was in force; or, in other words, as in 1880 the act of 1877 was in force, save the seventh section, which had been repealed, then, when the town authorities recited that the bonds were issued under the provisions of the act of 1877, the clear meaning is that the bonds were issued under the provisions of the act that were in force at the date of the issuance of the bonds. The recital has reference to the statute as it stood when the bonds were issued, and not to it at some previous date. The position taken by the counsel for the defendant is as follows:

"It is true that there still remained in the act of 1877, the title of which is recited in the bonds, a provision by which an agreement might be arrived at between the town and the railroad company, and bonds issued in pursuance thereof, but this recital does not say that the bonds were issued after proceed-

ings taken in accordance with that section of the act, nor do they say that the bonds were issued in pursuance of the provisions of that act as amended by the law of 1879, so that it seems to us that when this plaintiff purchased these bonds containing this recital he was bound to examine the law referred to, and having done so, and finding therein two different provisions or methods by which the agreement which is provided for in that act should be arrived at between the town and the railroad company, he was bound to presume that the bonds might have been issued under either one of the methods provided by the act. Being bound by such presumption, he was also bound to know that section 7 of the act under which these bonds were issued was no longer in force, and it was his duty to ascertain whether these bonds had been issued under the provisions of section 7 or of the section which provides for a vote of the people."

When about to purchase these bonds, it was the duty of the plaintiff to inquire what authority the town had to issue the bonds in July, 1880, under the act of 1877. An examination of the statutes would have shown that at that time full authority existed under the provisions of the act of 1877, as then in force, for the issuance of bonds in aid of railways, provided the issuance thereof had been authorized by a vote of the tax-payers. True, such examination would have revealed the fact that one mode of authorizing the issuance of bonds provided for in the act of 1877 had been abrogated by the repeal of the seventh section thereof, in 1879; but I fail to see why the plaintiff was bound to presume, according to the contention of counsel for defendant, that the town authorities might have acted under the provisions of the seventh section, which had been repealed the previous year. On the contrary, the presumption would be that the town authorities knew of the repeal of this section, and, further, that they intended to act within the power actually conferred upon them. The plaintiff, therefore, when he purchased the bonds, had a right to assume that the bonds were issued under and in strict compliance with the provisions of the act of 1877, as the same remained in force on the 1st day of July, 1880. That statute, as then in force, conferred authority upon the town to aid in the construction of railways by the issuance of bonds, and further provided the steps to be taken in submitting any given proposition to the vote of the tax-payers. The determination of the question of fact necessary to be ascertained before the bonds could be legally issued, such as the filing of a proposition in writing on behalf of the railway company, the filing of a demand for an election, the holding the election, and the canvassing the vote, and the declaration of the result, is by the statute intrusted to the town officials by whom the bonds are issued; and the recital in the bonds to the effect that all the provisions of the statute had been complied with is tantamount to a recital that all the prerequisite steps required by the statute had been observed. It is not necessary to cite the many decisions of the supreme court of the United States upon the binding force of such recitals in favor of innocent purchasers for value. The supreme court of Minnesota, in the case of *Fulton* v. *Town of Riverton*, 44 N. W. Rep. 257, in a decision upon the validity of bonds issued for drainage purposes under the act approved February 27, 1883, holds that—

"Where, by legislative enactment, authority has been given to a municipality, or to its officers, to issue bonds for a proper purpose, but only on some condition precedent, such as the presentation of a petition bearing the signatures of two-thirds of the legal voters of said municipality, and where it is obvious from the enactment that the officers of the municipality have been invested with the power to decide whether that condition has been complied with, their recital and certificate in the bonds issued by them, and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality."

Under the settled doctrine of the decided cases, it seems clear that the plaintiff, when he purchased the bonds in question, with the recitals therein found, had a right to assume that the same were issued under the provision of the act of 1877, as the same were in force at the date of the issuance of the bonds, and that all the precedent steps required to be taken by the statute, as then in force, to authorize the actual issuance and delivery of the bonds, had been fully complied with; and that the plaintiff, having purchased the bonds for full value, in good faith, relying upon the assumptions which the law authorized him to deduce from the recitals made on behalf of the municipality by its proper officials, is entitled to estop the defendant from pleading as a defense that such recitals are not true as a matter of fact.    It follows that plaintiff is entitled to judgment for the amount due on the coupons declared on, with interest and costs.